**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CLAIRE M. WARREN,
                    *Plaintiff*,

v.

BANK OF AMERICA, N.A.,

                    *Defendant*.

Civil Action No.: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

## <u>PRELIMINARY STATEMENT</u>

1. This is an action brought by Plaintiff Claire M. Warren ("Dr. Warren" or "Plaintiff"), a retired physician and consumer, against Defendant Bank of America, N.A. ("BANA" or "Defendant"), arising from BANA's failure to remedy unauthorized charges on Plaintiff's personal credit card account and its wrongful refusal to honor Plaintiff's timely dispute.

2. Plaintiff seeks relief under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1643.

3. On October 16, 2025, Plaintiff was victimized by a telephone impersonation scheme in which a fraudster spoofed BANA's telephone number and induced Plaintiff to provide her credit card number.

4. The fraudster immediately used that information to charge three unauthorized transactions (the "Unauthorized Transactions") totaling $12,630.00 to Plaintiff's BANA credit card account (the "Account"), all payable to Indigo Airlines.

5. Plaintiff promptly disputed these charges with BANA via phone and through BANA's own online portal. Despite clear and uncontroverted evidence of fraud, BANA denied

Plaintiff's claim four times, reversed a provisional credit of $12,630.00, and has continued to hold Plaintiff liable for charges she did not authorize.

6. BANA is now charging Plaintiff interest on the fraudulently incurred balance at a rate of approximately $237.98 per month.

7. BANA's stated basis for denial—that the merchant provided documentation confirming Plaintiff received the merchandise or service—is facially implausible and demonstrates that BANA failed to conduct a reasonable investigation.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1640(e) (TILA civil liability), 15 U.S.C. § 1666 (FCBA), and 28 U.S.C. § 1331 (federal question jurisdiction), for Plaintiff's CUTPA claims pursuant to 28 U.S.C. 1367.

9. This Court has jurisdiction to award declaratory relief pursuant to 28 U.S.C. § 2201.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendant regularly conducts business in this District, and a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

11. Plaintiff Claire M. Warren is an individual residing at 45 Boulder Avenue, Stonington, Connecticut 06378.

12. Plaintiff is a "consumer" as defined under TILA, 15 U.S.C. § 1602, and the FCBA, 15 U.S.C. § 1666.

13. The BANA credit card account at issue was opened and maintained by Plaintiff in her individual name and used exclusively for personal, family, and household purposes.

14. Defendant Bank of America, N.A. ("BANA") is a national banking association chartered under the laws of the United States, with its principal place of business in Charlotte, North Carolina.

15. BANA is a "creditor" and "card issuer" as defined under TILA and the FCBA.

## FACTUAL ALLEGATIONS

16. At all times relevant hereto, Plaintiff was the sole account holder of Bank of America Atmos Reward Ascent Visa Signature credit card account ending in 4918 (the "Account"). The Account was used exclusively for personal, family, and household purposes.

17. On October 16, 2025, at approximately 12:25 p.m., Plaintiff received a telephone call on her mobile phone. The call appeared on her caller ID as "BANKOFAMERICA" with the telephone number (877) 833-5617, which is a legitimate BANA telephone number.

18. The caller identified himself as a representative of BANA's fraud department. The caller told Plaintiff that she had suspicious charges on her Account and that he needed to verify her credit card number.

19. Relying on the BANA caller ID display, Plaintiff reasonably believed she was speaking with Defendant's representative.

20. The call disconnected and reconnected multiple times—Plaintiff received five to six telephone calls from the same spoofed BANA number on October 16, 2025. The caller advised Plaintiff that the process was taking longer than anticipated as his stated reason for the repeated calls.

21. During these calls, Plaintiff provided her credit card number to the caller, who she reasonably believed to be Defendant's employee. Plaintiff did not provide her credit card

information for any purpose other than what she understood to be identity verification with her own bank.

22. Plaintiff did not authorize the caller or any other third party to make any purchases or incur any charges on her Account. Plaintiff received no benefit whatsoever from the transactions described herein.

23. Later on October 16, 2025, three unauthorized transactions were posted to Plaintiff's Account, all bearing the merchant description "INDIGO AIRLINES," in the following amounts:

| Date | Merchant | Amount |
|---|---|---|
| October 16, 2025 | INDIGO AIRLINES | $4,062.00 |
| October 16, 2025 | INDIGO AIRLINES | $2,484.00 |
| October 16, 2025 | INDIGO AIRLINES | $6,084.00 |
| **TOTAL** | | **$12,630.00** |

24. Plaintiff did not make, authorize, or benefit from any of the Unauthorized Transactions.

25. Upon discovering the Unauthorized Transactions early on October 17, 2025, Plaintiff immediately recognized she had been defrauded and contacted Defendant using the telephone number printed on the back of her credit card. A BANA representative confirmed the fraud, froze Plaintiff's Account, and initiated a fraud claim.

26. The fraudulent nature of the Unauthorized Transactions is further confirmed by:

(a) Plaintiff's call log showing the spoofed BANA number (877) 833-5617 calling her mobile phone multiple times on October 16 and October 17, 2025;

(b) a police report filed with the Stonington Police Department on November 17, 2025 (Report No. 2500018512);

(c) multiple disputes via phone and the BANA website; and

(d) Plaintiff's written dispute letter.

27. On October 30, 2025, Plaintiff submitted a timely written dispute of the Unauthorized Transactions to BANA through its own online banking portal. In her dispute, Plaintiff identified her Account, described the three Unauthorized Transactions with their dates and amounts, and explained that she had not authorized the charges—that they were made by a phone fraudster who had impersonated Defendant's employee.

28. Plaintiff also notified Defendant multiple times by telephone starting on October 17, 2025 of the unauthorized nature of the charges.

29. Plaintiff filed a police report with the Stonington Police Department on November 17, 2025 (Report No. 2500018512) documenting the telephone fraud scheme and the Unauthorized Transactions.

30. On or about November 12, 2025, Plaintiff contacted BANA and requested the documentation BANA relied on in its investigation of her claim.

31. Following Plaintiff's initial notification, Defendant issued a provisional credit of $12,630.00 to Plaintiff's Account, temporarily removing the Unauthorized Transactions from her balance. This provisional credit appeared on Plaintiff's Account on or about October 20, 2025.

32. Defendant conducted multiple purported "re-evaluations" of Plaintiff's dispute and issued at least four written denial letters dated November 20, 2025; December 30, 2025; January 11, 2026; and March 20, 2026. Each letter bears claim number 251018G191A7.

33. By letter dated November 20, 2025, Bank of America denied Plaintiff's claim, stating: "The charge was authorized by you or made by someone who has permission to use the card or account." BANA claimed its investigation included "internal system verification" only. No supporting documentation was provided to Plaintiff.

34. By letter dated December 30, 2025, Bank of America again denied Plaintiff's claim, this time asserting a different basis: "The merchant provided documentation confirming you received the merchandise or service." BANA announced that the provisional credit of $12,630.00 would be removed from Plaintiff's Account.

35. By letter dated January 11, 2026, Bank of America issued a third written denial, again citing: "The merchant provided documentation confirming you received the merchandise or service." BANA confirmed the removal of the $12,630.00 provisional credit and notified all four major credit reporting agencies—TransUnion, Experian, Equifax, and Innovis—of its decision.

36. By letter dated March 20, 2026, BANA issued a fourth written denial of Plaintiff's claim, again citing: "The merchant provided documentation confirming you received the merchandise or service." BANA again confirmed the removal of the $12,630.00 provisional credit and again referenced notification to all four credit reporting agencies. BANA's fourth denial came despite the pendency of an active law enforcement investigation by the Stonington Police Department into the fraudulent use of the airline tickets.

37. Plaintiff also filed a regulatory complaint with Defendant. By communication dated on or about January 26, 2026, BANA's Regulatory Complaints department assigned the matter to Resolution Specialist Crystal Hayes (Reference No. C-260126CR1003061). No substantive resolution has been reached.

38. As a direct and proximate result of BANA's actions, Plaintiff has suffered and continues to suffer actual damages, including but not limited to: the unreimbursed principal amount of $12,630.00; interest and finance charges assessed on the disputed balance, including a

charge of $237.98 assessed on February 17, 2026, with additional interest charges continuing to accrue at the same monthly rate.

39. Following the fraud, Plaintiff froze her credit with all three major credit bureaus, and took significant precautionary measures to protect her financial accounts—all causing further disruption and inconvenience to her personal and financial life.

40. In addition to the pecuniary damages described above, Plaintiff has suffered and continues to suffer damages for emotional distress, pain, and suffering as a direct and proximate result of BANA's conduct.

## CAUSES OF ACTION

### COUNT I: Violation of the Truth in Lending Act, 15 U.S.C. § 1643

41. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

42. The Truth in Lending Act, 15 U.S.C. § 1643, limits a cardholder's liability for unauthorized use of a credit card to a maximum of fifty dollars ($50.00).

43. The Unauthorized Transactions were "unauthorized use" within the meaning of 15 U.S.C. § 1643. No person with actual, implied, or apparent authority made the charges. Plaintiff was deceived by a telephone impersonation scheme into providing her card number; she did not authorize any purchase from Indigo Airlines. The fraudster had no authority—actual, implied, or apparent—to use Plaintiff's Account.

44. Plaintiff notified Bank of America of the unauthorized use on October 17, 2025, by telephone, and again on October 30, 2025, in writing via BANA's own online portal. Plaintiff's notification was timely and constitutes reasonable notice within the meaning of 15 U.S.C. § 1643.

45. Under 15 U.S.C. § 1643, BANA bears the burden of proving that the Unauthorized Transactions were authorized. BANA cannot meet that burden. Any Indigo Airlines documentation BANA claims to have obtained reflects a reservation made by the fraudster—not authorization by Plaintiff—and does not satisfy BANA's statutory burden of proof.

46. Plaintiff's maximum liability for the Unauthorized Transactions under 15 U.S.C. § 1643(a)(1)(B) is fifty dollars ($50.00). BANA is unlawfully holding Plaintiff liable for the full amount of $12,630.00, far in excess of the statutory maximum.

47. As a result of BANA's violation of 15 U.S.C. § 1643, Plaintiff is entitled to: (a) actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering; (b) statutory damages in an amount equal to twice the amount of any finance charge in connection with the transaction, with a minimum of $500.00 and a maximum of $5,000.00, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures, pursuant to 15 U.S.C. § 1640(a)(2)(A)(i); (c) a declaration that Plaintiff is not liable for the Unauthorized Transactions beyond $50.00; and (d) attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

**COUNT II: Violation of the Fair Credit Billing Act, 15 U.S.C. §§ 1666 et seq.**

48. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49. The Fair Credit Billing Act, 15 U.S.C. §§ 1666 et seq., requires a card issuer to conduct a reasonable investigation of a timely written billing error dispute and to either correct the billing error or provide the consumer with a written explanation of why the issuer believes no error occurred.

50. The Unauthorized Transactions constitute a "billing error" within the meaning of the FCBA, 15 U.S.C. § 1666(b), as charges for property or services not accepted by Plaintiff and not delivered to Plaintiff as agreed, and as charges resulting from unauthorized use of Plaintiff's credit card.

51. Plaintiff submitted a timely written dispute of the billing error to Bank of America on October 30, 2025, via BANA's own online portal. Plaintiff's dispute was submitted within sixty days of the transmission of the billing statement on which the Unauthorized Transactions first appeared.

52. Plaintiff's written dispute identified the Account, identified the three Unauthorized Transactions with their dates and amounts, stated Plaintiff's belief that a billing error had occurred, and explained why Plaintiff believed the charges were unauthorized.

53. Bank of America violated the FCBA by failing to conduct a reasonable investigation of Plaintiff's dispute. A reasonable investigation would have included, at minimum: (a) a substantive review of Plaintiff's account history and prior usage patterns to assess whether purchases of three Indigo Airlines tickets totaling $12,630.00 were consistent with Plaintiff's historical account use; (b) a review of the police report Plaintiff provided documenting the telephone fraud scheme; (c) an assessment of whether any Indigo Airlines documentation actually established authorization by Plaintiff, as distinguished from merely confirming that a reservation was made using Plaintiff's account credentials by an unknown third party; and (d) any inquiry into the telephone impersonation scheme Plaintiff described in her written dispute.

54. Bank of America violated the FCBA by providing an inadequate written explanation for its denial. BANA's denial letters contain only boilerplate language. The assertion that

"the merchant provided documentation confirming you received the merchandise or service"—applied to airline tickets purchased by a fraudster through a spoofed-call impersonation scheme—does not constitute an adequate explanation within the meaning of the FCBA.

55. Bank of America violated the FCBA by reversing Plaintiff's provisional credit and seeking to collect the disputed amount before completing a legally compliant investigation. By announcing on January 11, 2026 that the provisional credit of $12,630.00 would be removed—without a legally adequate basis for denial—BANA violated 15 U.S.C. §§ 1666(a) and 1666a(a).

56. As a result of BANA's violations of the FCBA, Plaintiff is entitled to: (a) actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering; (b) statutory damages in an amount equal to twice the amount of any finance charge in connection with the transaction, with a minimum of $500.00 and a maximum of $5,000.00, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures, pursuant to 15 U.S.C. § 1640(a)(2)(A)(i); (c) a declaration that Plaintiff is not liable for the disputed amount; and (d) attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT III: Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.

57. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

58. CUTPA, §42-110b prohibits "…unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

59. Plaintiff is a "Person" pursuant to CUTPA, §42-110a(3).

60. The Unauthorized Transactions are a "Trade" or "Commerce" pursuant to CUTPA, §42-110a(4).

61. Plaintiff submitted a timely written dispute of the billing error to BANA on October 30, 2025, via BANA's own online portal. Plaintiff's dispute was submitted within sixty days of the transmission of the billing statement on which the Unauthorized Transactions first appeared.

62. Plaintiff's written dispute identified the Account, identified the three Unauthorized Transactions with their dates and amounts, stated Plaintiff's belief that a billing error had occurred, and explained why Plaintiff believed the charges were unauthorized.

63. Bank of America violated the CUTPA by failing to conduct a reasonable investigation of Plaintiff's dispute. A reasonable investigation would have included, at minimum: (a) a substantive review of Plaintiff's account history and prior usage patterns to assess whether purchases of three Indigo Airlines tickets totaling $12,630.00 were consistent with Plaintiff's historical account use; (b) a review of the police report Plaintiff provided documenting the telephone fraud scheme; (c) an assessment of whether any Indigo Airlines documentation actually established authorization by Plaintiff, as distinguished from merely confirming that a reservation was made using Plaintiff's account credentials by an unknown third party; and (d) any inquiry into the telephone impersonation scheme Plaintiff described in her written dispute.

64. Bank of America violated CUTPA by providing an inadequate written explanation for its denial. BANA's denial letters contain only boilerplate language. The assertion that "the merchant provided documentation confirming you received the merchandise or service"—

applied to airline tickets purchased by a fraudster through a spoofed-call impersonation scheme—does not constitute an adequate explanation within the meaning of the FCBA.

65. Bank of America violated CUTPA by reversing Plaintiff's provisional credit and seeking to collect the disputed amount before completing a legally compliant investigation.

66. BANA violated CUTPA, §42-110b as the failing to conduct a reasonable investigation, providing an inadequate written explanation for its denial, and reversing Plaintiff's provisional credit and seeking to collect the disputed amount before completing a legally compliant investigation offends public policy as it has been established by statutes, the common law or otherwise.

67. BANA violated CUTPA, §42-110b as the failing to conduct a reasonable investigation, providing an inadequate written explanation for its denial, and reversing Plaintiff's provisional credit and seeking to collect the disputed amount before completing a legally compliant investigation are immoral, unethical, oppressive or unscrupulous.

68. BANA violated CUTPA, §42-110b as the failing to conduct a reasonable investigation, providing an inadequate written explanation for its denial, and reversing Plaintiff's provisional credit and seeking to collect the disputed amount before completing a legally compliant investigation caused substantial injury to Plaintiff as they are substantial, not outweighed by any countervailing benefit to Plaintiff, and Plaintiff could not have avoided them.

69. Through BANA's CUTPA violations, Plaintiff has suffered an "ascertainable" loss pursuant to CUTPA, §42-110g(a) in the form of the Unauthorized Transactions.

70. Through BANA's CUTPA violations, Plaintiff has suffered an "ascertainable" loss pursuant to CUTPA, §42-110g(a) in the form of the interest accruing on the Unauthorized Transactions.

71. As a result of BANA's violations of the CUTPA, Plaintiff is entitled to: (a) actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering pursuant to CUTPA, §42-110g(a); (b) punitive damages pursuant to CUTPA, §42-110g(a). (c) a declaration that Plaintiff is not liable for the disputed amount pursuant to CUTPA, §42-110g(d); and (d) attorneys' fees and costs pursuant to CUTPA, §42-110g(d).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff seeks judgment in her favor for:

(a) A declaration that Plaintiff is not liable for the Unauthorized Transactions or any amount arising therefrom beyond the $50.00 statutory maximum under 15 U.S.C. § 1643;

(b) Actual damages, including both pecuniary damages and damages for emotional distress, pain, and suffering;

(c) Statutory damages as provided by law;

(d) punitive damages;

(e) Attorneys' fees and costs;

(f) Pre-judgment and post-judgment interest; and

(g) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: May 19, 2026

Respectfully Submitted,

/s *Benjamin J. Wolf*
Benjamin J. Wolf
Whiteford, Taylor & Preston, LLP
444 Madison Avenue, 4th Floor
New York, New York 10022
T: (646) 492 5219
F: (646) 492-5227
E: bwolf@whitefordlaw.com


*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
(*pro hac vice motion forthcoming*)
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: (212) 500-6114
F: (646) 612-7996
E: dschlanger@consumerprotection.net

*Attorney for Plaintiff*